**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| FREEBIRD LIFE LLC,<br>1101 E 126th Ave., Unit 190<br>Thornton, CO 80241,<br><br>     Plaintiff,<br><br>v.<br><br>FREEBIRD.COM, an Internet Domain Name,<br><br>     Defendant. | Civil Action No: 1:25-cv-1641 |

## COMPLAINT

Plaintiff Freebird Life LLC (together with its predecessors-in-interest to the trademark rights asserted herein, "Freebird"), by counsel, alleges as follows for its *in rem* Complaint against Defendant FREEBIRD.com (the "Defendant Domain Name").

## NATURE OF THE SUIT

1. This is an *in rem* action for trademark infringement under the Lanham Act and cybersquatting under the Federal Anti-Cybersquatting Consumer Protection Act ("ACPA"), to stop an anonymous registrant of the Defendant Domain Name from ongoing and continuous bad faith misuse of Freebird's trademarks for his/her/its own financial gain.

2. The Plaintiff in this action, Freebird, is the owner of all right, title, and interest in, and consumer goodwill associated with, the footwear and accessories brand FREEBIRD and its trademark rights. Plaintiff offers numerous products, but its most celebrated are its leather boots, known for both their exceptional designs and quality craftsmanship. Plaintiff has used the

FREEBIRD mark since 2009 to offer these products throughout the United States and has attracted many loyal customers.

3. The brand's renown and strong consumer goodwill is evidenced through the bad acts complained of herein. Freebird brings this action against the *res* defendant FREEBIRD.com, an internet domain name that is being used to cybersquat and infringe on Freebird's trademark rights. On information and belief, the FREEBIRD.com domain name has never been used to host substantive content, for any *bona fide* commercial or noncommercial use. Instead, the domain name has been used primarily to offer pay-per-click advertising (for which the domain registrant receives compensation), and that pay-per-click advertising has specifically targeted the FREEBIRD mark. An example screenshot is below, showing not only use of FREEBIRD standing alone, but specifically paired with the products for which Freebird is well known:



4. In view of this association between the FREEBIRD mark and "boots" and other footwear at the Defendant Domain Name's website, it is apparent that FREEBIRD.com has been used, registered, and/or re-registered with knowledge of Freebird's trademark rights, and a bad faith intent to capitalize on those rights for the registrant's financial gain. This unauthorized use of the FREEBIRD mark constitutes both trademark infringement and cybersquatting under the Lanham Act and Anti-Cybersquatting Consumer Protection Act and entitles Freebird to relief to protect both its brand and its customers.

## PARTIES

1. Freebird Life LLC is a Delaware limited liability company with its principal place of business at 1101 E 126th Ave., Unit 190, Thornton, CO 80241.

2. FREEBIRD.com is an Internet domain name registered to a person or entity who has employed a privacy service to conceal his/her/its identifying information. Domain records reflecting the current domain registration are attached as Exhibit A.

## JURISDICTION AND VENUE

3. This is a civil action for federal trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114(1), and federal cybersquatting in violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

4. This Court has original jurisdiction under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338(a).

5. This Court has *in rem* jurisdiction over the Defendant Domain Name pursuant to 15 U.S.C. § 1125(d)(2)(A), which provides for *in rem* jurisdiction for "any right of the owner of a mark registered in the Patent and Trademark Office, or protected under [15 U.S.C. § 1125] subsection (a) or (c)." *In rem* jurisdiction is appropriate under 15 U.S.C. § 1125(d)(2)(A)(ii)

because the domain registration record for the Defendant Domain Name reflects not the actual registrant, but rather a privacy service, and records further indicate that the registrant resides outside the United States, and therefore Freebird cannot obtain *in personam* jurisdiction over a person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(1)(A), or alternatively, Freebird, despite its due diligence, has been unable to find a person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(1)(A).

6.　　Pursuant to 15 U.S.C. § 1125(d)(2)(A)(ii)(II)(aa), Freebird will give notice of the violations of its rights, and its intent to proceed *in rem*, to the contact address set forth in the registration records for the Defendant Domain Name.

7.　　Venue is proper in this District pursuant to 15 U.S.C. § 1125(d)(2)(C) in that the registry operator of the .COM domain registry, VeriSign, Inc., is situated in this judicial district, and the Defendant Domain Name is a .COM domain name.

## FREEBIRD'S RIGHTS IN THE FREEBIRD MARKS

8.　　Freebird was founded in 2009 in Denver, Colorado, to provide high-quality, craftsman footwear.

9.　　Freebird's flagship product is its leather boots, made through time-honored traditions to ensure that each pair is as functional as it is beautiful. Freebird and its loyal customers consider its boots to be wearable works of art, e.g.:



10. Though its boots remain one of its most popular and prominent products, Freebird's offerings extend into other footwear and accessories, including sandals, heels, sneakers, baby booties, hats, wallets, and key chains.

11. Freebird sells its products through many outlets, including its own online retail store at freebirdstores.com. Freebird has used the domain name continuously since 2018 to host a website offering its online retail services.

12. In addition to its online retail site, Freebird has brick-and-mortar retail locations in Nashville, TN, and Charleston, SC.

13. Freebird has used the mark FREEBIRD from its founding continuously to this day, as its business name, trademark, service mark, under which it offers its footwear, accessory, and retail services.

14. Freebird's high-quality products have attracted significant media attention, with features in publications ranging from local press outlets, to specialty press outlets focused on Western-wear, to major national press outlets like Forbes.

15. The exceptional quality and publicity have given rise to exceptional consumer recognition and goodwill, which can be seen through, *inter alia*, Freebird's strong social media

following: Freebird's Instagram page has over half a million followers, and its Facebook page has over 750,000 followers.

16. Based on its inherent distinctiveness, continuous use, and the significant consumer recognition and goodwill, the FREEBIRD mark is entitled to broad common law trademark rights for goods and services including, but not limited to, footwear and accessories, and retail services for the same.

17. In addition to its common law trademark rights, Freebird has successfully registered with the U.S. Patent and Trademark Office numerous marks using the term FREEBIRD as their sole or dominant element, including the following:

- Reg. No. 5938581, FREEBIRD BY STEVEN, for "shoes," filed on October 5, 2017, and registered on the Principal Register on December 17, 2019;

- Reg. No. 7001866, FREEBIRD, for "Handbags; bags, namely, tote bags, cross body, clutch, hobo bags, weekend bags, travel bags, shoulder bags; purses; backpacks; travel cases; wallets;" "Footwear; boots; shoes; clothing, namely, booties, sandals; belts;" and "Retail store and on-line retail store services featuring footwear, shoes, boots, belts, fashion accessories, handbags, backpacks, bags and leather goods," filed on April 20, 2021, and registered on the Principal Register on March 14, 2023; and

- Reg. No. 7001867, FREEBIRD (and Design), for "Handbags; bags, namely, tote bags, cross body, clutch, hobo bags, weekend bags, travel bags, shoulder bags; purses; backpacks; travel cases; wallets;" "Footwear; boots; shoes; clothing, namely, booties, sandals; belts;" and "Retail store and on-line retail store services featuring footwear, shoes, boots, belts, fashion accessories, handbags, backpacks, bags and leather goods," filed on April 20, 2021, and registered on the Principal Register on March 14, 2023.

Copies of the registrations and associated assignment records are attached hereto as Exhibit B.

18. Freebird also owns pending trademark applications for the FREEBIRD Marks, including the following:

- App. Ser. No. 90658898, FREEBIRD, for "dresses, t-shirts, pants, jeans, shorts, jackets, coats, gloves, socks, scarves; outerwear, namely, jackets and coats; headwear; sleepwear; loungewear; underwear; swimwear," filed on April 20, 2021; and

6

- App. Ser. No. 90658906, FREEBIRD (and Design) for "dresses, t-shirts, pants, jeans, shorts, jackets, coats, gloves, socks, scarves; outerwear, namely, jackets and coats; headwear; sleepwear; loungewear; underwear; swimwear," filed on April 20, 2021.

Copies of the applications and associated assignment records are attached hereto as Exhibit C.

19. The aforementioned registrations constitute (and the aforementioned applications, once registered, will constitute) *prima facie* evidence of the validity of, and Freebird's exclusive rights to use, the identified marks. Freebird's statutory trademark rights conveyed by the aforementioned registrations, together with the common law rights described herein, are referred to collectively as the "FREEBIRD Marks."

## UNLAWFUL REGISTRATION AND/OR USE OF THE DOMAIN NAME

20. On information and belief, the Defendant Domain Name was most recently re-registered in or around May 2025; prior to that, it was re-registered in June 2024, and June 2023.

21. On information and belief, FREEBIRD.com has never resolved to a website with substantive content. It has been used intermittently for landing pages, sale pages, and even malware. By far its most consistent use, however, has been for pay-per-click advertising. On information and belief, the subject matter of the pay-per-click advertising has varied over the years, but since at least 2020, the pay-per-click advertising has focused on shoes generally and FREEBIRD shoes specifically. *See, e.g.*, screenshot from January 14, 2020:



*See, e.g.*, screenshot from August 22, 2025:



8

22. On information and belief, the registrant of the Defendant Domain Name receives financial compensation when visitors navigate to FREEBIRD.com and click on one of the links.

23. On information and belief, the registrant of the Defendant Domain Name has had actual notice of Freebird, its footwear products, and its FREEBIRD Marks, since prior to registering or re-registering the Defendant Domain Name.

24. None of the links or references to the FREEBIRD Marks are or have ever been authorized by Freebird, and, on information and belief, many of the uses of the FREEBIRD Marks direct consumers to retailers that also have no affiliation with Freebird and are not authorized to use the FREEBIRD Marks.

25. The registrant of the Defendant Domain Name has been using the FREEBIRD Marks, without Freebird's authorization, to offer and/or promote products the same or substantively identical to Freebird's own products.

26. The registrant of the Defendant Domain Name has been offering and/or promoting products under the FREEBIRD Marks, without Freebird's authorization, for his/her/its own financial gain, through, *inter alia*, increased web traffic from misdirected viewers attempting to reach Freebird's website, pay-per-click advertising including advertising that uses Freebird's registered marks, and/or sales of products the same or substantially similar to Freebird's products.

27. The Defendant Domain Name does not reflect the legal name of its registrant.

28. Since at least as early as the date of the most recent re-registrations, the registrant of the Defendant Domain Name has not engaged in *bona fide* commercial use of the FREEBIRD Marks for a website accessible under the Defendant Domain Name and is instead attempting to misrepresent an affiliation with Freebird by displaying the FREEBIRD Marks and/or promotions for the particular products offered by Freebird.

29. The website displayed by the registrant of the Defendant Domain Name is likely to be confused with Freebird's legitimate online locations.

30. The registrant of the Defendant Domain Name and/or his/her/its representatives have offered to transfer, sell, or otherwise assign the Defendant Domain Name to Freebird for significant financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services.

31. On information and belief, the registrant of the Defendant Domain Name registered and/or re-registered the Defendant Domain Name with intent to divert consumers away from Freebird's online locations, for commercial gain, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the Defendant Domain Name and the sites displayed through use of the Defendant Domain Name.

32. The registrant of the Defendant Domain Name provided material and misleading false contact information when registering/re-registering/renewing the Defendant Domain Name through consistent use of a privacy service to conceal the person/entity's true identity.

## COUNT ONE:
### (*In-Rem* Trademark Infringement)

33. Freebird repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

34. At the time the Defendant Domain Name was registered, renewed, re-registered, and/or used, Freebird possessed valid common law and statutory trademark rights in the FREEBIRD Marks.

35. In light of the registrant's concealment of his/her/its identity and purported location outside the United States, Freebird is not able to obtain *in personam* jurisdiction over the registrant of the Defendant Domain Name or any other person who would have been a defendant in a civil

action under 15 U.S.C. § 1125(d)(1)(A) or, alternatively, Freebird, despite its due diligence, has been unable to find a person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(1)(A).

36. The registration and use of the Defendant Domain Name is use in commerce.

37. The registration and use of the Defendant Domain Name affects Freebird's ability to use its FREEBIRD Marks in commerce.

38. The Defendant Domain Name and its registrant have no valid rights in the FREEBIRD Marks.

39. Use by the Defendant Domain Name and its registrant of the FREEBIRD Marks is without the permission or authorization of Freebird.

40. The aforesaid registration and/or use of the Defendant Domain Name have caused and are likely to continue to cause confusion, mistake, and/or deception among consumers and the public, leading the public falsely to believe that the Defendant Domain Name and/or the website provided thereunder are sponsored or approved by, or are in some way connected with Freebird.

41. The aforesaid registration and/or use of the Defendant Domain Name constitutes direct intentional infringement of Freebird's trademark rights in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

42. The aforesaid acts have caused, and are causing, great and irreparable harm to Freebird and the public. The harm to the public includes the potential for fraud and deception stemming from use of the domain that is intended to mislead consumers. The harm to Freebird includes harm to the value and goodwill associated with the FREEBIRD Marks that money cannot compensate. Unless permanently restrained and enjoined by this Court, said irreparable harm will continue.

## COUNT TWO:
### (Violation of the Federal Anti-Cybersquatting Consumer Protection Act)

43. Freebird repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

44. Freebird's FREEBIRD Marks are distinctive and were distinctive prior to the recent registrations of the Defendant Domain Name, including in 2023, 2024, and 2025.

45. The aforesaid acts by the registrant of the Defendant Domain Name constitute registration, maintenance, trafficking in, and/or use of a domain name that is confusingly similar to Freebird's FREEBIRD Marks, with bad-faith intent to profit therefrom.

46. In light of the registrant's concealment of his/her/its identity and purported location outside the United States, Freebird is not able to obtain *in personam* jurisdiction over the registrant of the Defendant Domain Name or any other person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(1)(A) or, alternatively, Freebird, despite its due diligence, has been unable to find a person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(1)(A).

47. The aforesaid acts by the registrant of the Defendant Domain Name constitute unlawful cyberpiracy in violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1).

48. The aforesaid acts have caused, and are causing, great and irreparable harm to Freebird and the public. The harm to the public includes the potential for fraud and deception stemming from use of the domain that is intended to mislead consumers. The harm to Freebird includes harm to the value and goodwill associated with the FREEBIRD Marks that money cannot compensate. Unless permanently restrained and enjoined by this Court, said irreparable harm will continue.

49. Pursuant to 15 U.S.C. § 1125(d)(2)(D)(i), Freebird is entitled to an order directing the registry for the Defendant Domain Name to change the current registrar to Freebird's registrar of choice and directing the registrant to be changed to Freebird.

### PRAYER FOR RELIEF

WHEREFORE, Freebird respectfully requests of this Court:

1. That the Court order immediate preliminary and permanent injunctive and other equitable relief to disable the use of the Defendant Domain Name.

2. That judgment be entered in favor of Freebird on its claims of trademark infringement and cybersquatting.

3. That the Court order the domain registry for the Defendant Domain Name to change the registrar for the Defendant Domain Name to Freebird's registrar of choice and order the registrar to change the registrant to Freebird.

4. That the Court order an award of costs and reasonable attorney's fees incurred by Freebird in connection with this action pursuant to 15 U.S.C. § 1117(a); and

5. That the Court order an award to Freebird of such other and further relief as the Court may deem just and proper.

Dated: September 30, 2025    By:   /s/ Attison L. Barnes, III
Attison L. Barnes, III (VA Bar No. 30458)
David E. Weslow (for *pro hac admission*)
Adrienne J. Kosak (VA Bar No. 78631)
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
Tel: (202) 719-7000
abarnes@wiley.law
dweslow@wiley.law
akosak@wiley.law

*Counsel for Freebird Life LLC*